Eli S. Warner et al., Appellees, v. Sophie Wende, Appellant.

Gen. No. 27,208.

1. BONDS—*form of plea as estoppel of surety in measurement of damages from wrongful injunction.* In an action on an injunction bond, the surety is entitled to take part and examine witnesses and introduce evidence on the question of damages notwithstanding her plea "that she did not promise in manner and form as the plaintiff has above thereof complained against her," where no objection is made to the form of the plea at the trial which proceeds as though a proper plea had been filed and the execution of the bond is not disputed.

2. INJUNCTIONS—*extent of recovery for legal services in dissolution of wrongfully issued injunction.* In an action at law on an injunction bond after dissolution of the injunction, an award of $2,000 for legal services in securing dissolution of the injunction is sustained by evidence which shows that plaintiff's attorneys devoted forty-five days to the work in question, of which ten to fifteen days were actually spent in court, that an appeal was taken to the Appellate Court and thirty days devoted to preparation of briefs, searches for authorities and similar work, although there is some evidence that other matters than the dissolution were involved during a part of the time before the court.

3. INJUNCTIONS—*custodian's fees as proper item of damages from wrongful injunction against execution.* In an action at law an injunction bond given to enjoin a sheriff from executing a writ of execution after he had levied on goods, a charge for custodian's fees as an item of damages for wrongful issuance of the injunction

is sufficiently established as a reasonable and necessary charge where the sheriff's return shows the expenditure in question and the evidence shows the custodian was in charge 345 days, that he was experienced in such work and that the charge per day for his services was the usual and customary charge at the time, and the bond expressly included "any expense incurred by said sheriff in keeping a custodian in charge."

4. INJUNCTIONS—*evidence as to damages from wrongful issuance of bond.* In an action at law on an injunction bond after dissolution of an injunction restraining a sheriff from executing a writ of execution after he had levied on goods, it is not error to exclude evidence that a custodian was unnecessary because the goods were located in a fireproof building, where the sheriff was responsible for their safekeeping and was pursuing the usual and customary course in employing a custodian and the bond expressly covered a custodian's fees.

Appeal by defendant from the Circuit Court of Cook county; the Hon. DONALD L. MORRILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Affirmed. Opinion filed February 16, 1923. *Certiorari* denied by Supreme Court (making opinion final).

JOHN B. FRUCHTL, for appellant.

BITHER & GOFF, for appellees.

MR. JUSTICE TAYLOR delivered the opinion of the court.

A writ of execution having been issued in a suit entitled *Warner v. Osterlind-Ford Co.,* in the superior court of Cook county, and a levy having been made thereunder by the sheriff upon certain property contained in the premises known as the fourth floor of the building at 626 Federal street, Chicago, one Frank J. Wende filed a bill against Warner and the sheriff and obtained an injunction restraining the further execution of the writ. An injunction bond, which is here sued on, was given by the principal, Frank J. Wende, with the defendant herein, Sophie Wende, as surety. Subsequently, after a trial, the injunction was dis-

solved and that cause dismissed.  This suit was then brought by Warner and Zimmer, former sheriff, plaintiffs herein, against Sophia Wende, the defendant herein, as surety on the injunction bond.  There was a trial by the court and a jury and at the close of all the evidence the court instructed the jury to find the issues for the plaintiff and against the defendant on the question of the defendant's indebtedness to the plaintiff, and to assess the plaintiff's debt at $3,000 and his damages at a like sum.  The court also instructed the jury to find the issues on the attachment for the defendant.  The jury brought in a verdict as directed and judgment was entered thereon.

These proceedings were begun in the form of an attachment.  Plaintiffs first filed a declaration and subsequently an affidavit of attachment and then an amended affidavit of attachment.  The ground of attachment in each instance was the charge that the defendant, Sophie Wende, was about fraudulently to conceal, assign or otherwise dispose of her property.  The defendant urged that the attachment writ be quashed and pleaded, ''that she did not promise in manner and form as the plaintiff has above thereof complained against her,'' etc.

The theory of the defendant is that the damages claimed were for attorney's fees rendered in dissolving the injunction and for certain sums of money paid to the sheriff as custodian in protecting certain property while it was in his charge, and as the evidence showed that some of the charges made were for work done outside of that involved in obtaining the dissolution of the injunction, and as the evidence failed to show that said charges of the sheriff were fair and reasonable, the evidence should have been submitted to the jury for their determination.

The pleadings in *Wende v. Osterlind-Ford Co.* and *Wende v. Warner and Zimmer,* the sheriff, are not in the record, and as a result it is impossible to deter-

mine just what the issues were in those cases. The decree, however, in *Wende v. Warner* is in evidence.

The bond upon which this suit is brought and which the defendant signed, as surety, sets forth that Frank J. Wende had filed a bill against Zimmer, sheriff, and Warner et al., praying for an injunction to restrain them from proceeding any further to enforce payment of the writ of execution issued in *Warner v. Osterlind-Ford Co.* out of the property levied upon by said sheriff by virtue of said execution, and contained in the premises known as the fourth floor of 626 Federal street. The condition of the bond was that if Frank J. Wende and Sophie Wende pay to Zimmer, sheriff, and Warner "all damages which may be sustained by the said defendant, or any one or both of them by reason of the wrongful issuing of such injunction, and also, all such costs and damages as shall be awarded against the said complainant in case the said injunction shall be dissolved; including any expense incurred by said sheriff in keeping a custodian in charge of the property levied upon as aforesaid from this date, then the above obligation to be void; otherwise to be and remain in full force and virtue."

The final decree entered April 30, 1915, in the injunction suit of *Wende v. Zimmer et al.*, in which the bond was given, recites, among other things, that there was no fraud in procuring the judgment in the case of *Warner v. Osterlind-Ford Co.;* that there was an actual indebtedness from the Osterlind-Ford Company to Warner at the time of entry of the judgment; that there was no fraud in procuring the execution of the judgment note sued upon; that it was a valid obligation of the Osterlind-Ford Company; that there was no conspiracy nor fraud on the part of any of the defendants; "that the sale of the property from the Osterlind-Ford Company to the defendant Osterlind on June 25, 1913, was in contravention of the Bulk Sales Law which was then and is now in full force and

effect." The decree ordered that the preliminary injunction be dissolved and the bill dismissed for want of equity at the complainant's cost.

In addition to the bond, the decree, and the execution in the case of *Warner v. Osterlind-Ford Co.*, there was offered in evidence, also, the testimony of William A. Bither, for the plaintiff, and one Hall for the defendant.

(1) It is contended on the part of the plaintiff that as the defendant only pleaded that she did not promise in manner and form as alleged, the situation is the same as though the defendant had filed a plea of *non est factum,* and that the plea in reality only raised a single question, whether or not the bond was that of the appellant, the damages being admitted. On the other hand, it is contended on the part of the defendant that the plea was not *non est factum* but was a plea of nonassumpsit, and in effect a general denial of all the material allegations in the declaration. The record shows that no objection was made to the plea during the trial of the cause and that the trial proceeded as though a proper plea had been filed. Inasmuch, however, as at the trial the execution of the bond was not disputed and the only question that was controverted was that of damages, we are of the opinion that the defendant, notwithstanding her plea, was entitled to take part and cross-examine witnesses of the plaintiff and introduce evidence on the subject of damages.

In *Wanack v. People,* 187 Ill. 116, a suit against a surety upon a saloonkeeper's bond, where the declaration was demurred to, and the declaration was held good, and a judgment entered upon evidence introduced, the court said: "While a default admits every material allegation of the declaration, it does not admit the amount of damages," etc. And, further: "Certainly, the surety on the bond would have had a right, under proper pleas, to show any fact tending to

reduce the amount of that judgment; and even upon this default we see no reason why he might not have offered such proof if he had seen proper to do so." If in case of a default the surety might contest the damages and put in evidence, *a fortiori,* in the instant case, where the surety pleaded "she did not promise in manner and form as the plaintiff" has complained, the surety may do so. *Foster v. People,* 121 Ill. App. 165. In *Loellke v. Grant,* 120 Ill. App. 74, where there was a judgment *nil dicit* which operated substantially as a judgment by default, the court said, citing the *Wanack* case, *supra:* "Upon the question of the assessment of damages appellants were, upon demand, entitled to a jury and to cross-examine appellees' witnesses and to introduce evidence on their own behalf." Where the damages are unliquidated, the defendant is entitled to take part in the measurement of them, whether he has pleaded *non est factum, nil debet,* or the judgment is to be *nil dicit.*

The important question in the case is, what damages, if any, were proven as the result of the legal work done in bringing about the dissolution of the temporary injunction, and what amount, if any, expense was incurred by the sheriff in keeping a custodian in charge of the property levied upon.

As to the damages resulting from the wrongful issuing of the injunction: The evidence of the witness Bither is to the effect that Warner employed Buell and Abbey, attorneys, for the purpose of obtaining a dissolution of the injunction; that he, Bither, represented a party who owed Warner or who had guaranteed the account to Warner originally; that Buell and Abbey and he worked together in the case; that he knew personally the work they did in seeking to have the injunction dissolved; that he knew of his own knowledge that they put in something over forty days, about forty-five days in seeking to have the injunction dissolved. When asked the question, "That was in the

work in seeking dissolution of the injunction legally?" he answered, "Entirely." He further testified that the usual and customary charge for that work was $50 a day, or $2,000. On cross-examination he testified that there was a motion made to dissolve the injunction; that it was overruled by Judge Windes in the lower court and went up to the Appellate Court and Judge Windes' decision was affirmed and the injunction permitted to stand; that other motions were made; that on the hearing on the merits the injunction was dissolved. The witness further testified, on cross-examination, that there was a separate bill for certain work done by Buell and Abbey. Referring to the charges here, the witness said, "this was simply for the work done on this bill and the injunction, dissolving the injunction." He further testified, when asked what work was done in dissolving the injunction by Buell and Abbey, "They made a motion to dissolve and that motion went to the Appellate Court, and it came back and then there was a motion that the injunction be dissolved and the property sold and the court hold the funds. And that motion was heard * * * three or four times"; that that was during the year that on the first motion to dissolve they spent three days in the lower court; that then the case went to the Appellate Court where briefs were filed and argument made; that there was a motion to dissolve the injunction so they could sell the property; that it was dissolved as to two pieces of the property. Further, on cross-examination, he testified that they were a long time before Judge Windes on the matter of dissolving the injunction; that "The merits was the injunction." "There was no merits to the bill; the court held there wasn't"; that about ten days was actually spent in court and about thirty days preparing briefs and argument; that all there was at any time "was the dissolution of the injunction."

Inasmuch as it is impossible to determine with sat-

isfactory accuracy just what the issue was in the suit in equity in which the bond was given for the injunction, we are not able to hold otherwise than that, according to the evidence of Bither, the legal services rendered by Buell and Abbey should be figured at forty days at $50 per day, making in all $2,000.

It is true that the cross-examination of Bither seems to indicate that there were some matters before the court that were discussed, such as the advisability of taking property from under the injunction and allowing it to be sold, that did not necessarily involve the actual dissolution of the injunction, still, taking his testimony all together and making all reasonable inferences from it, we feel bound to conclude, as the trial judge did, that it affirmatively shows that Buell and Abbey rendered legal services in securing the dissolution of the injunction to the value of $2,000.

It will be observed that this is not an application to the chancellor by the defendant in an injunction proceeding suggesting damages; in other words, it is not a proceeding based on section 12 of chapter 69 of the Statutes [Cahill's Ill. St. ch. 69, ¶ 12]. It is a suit at law upon the bond and the parties are, therefore, bound by the particular language of the bond itself. Such a bond is a written contract and may be sued upon and damages obtained according to the evidence presented. *Garst v. Jackson*, 211 Ill. App. 360.

The important words in the bond in this case are as follows: "All damages which may be sustained by the said defendant, or any one or more of them by reason of the wrongful issuing of such injunction." Bearing in mind that provision of the bond and the testimony as it appears before us in the record, we feel compelled to conclude that Buell and Abbey were entitled to $2,000 as a reasonable fee for their services based upon the labor which they performed in accomplishing the dissolution of the injunction.

(3)  As to the expenses incurred by the sheriff in

keeping a custodian in charge of the property levied upon: The return of the sheriff on the execution, which was for $12,610.30, shows a total charge for custodian's fees of $1,384. The damages provided for in the bond included "any expense incurred by said sheriff in keeping a custodian in charge of the property levied upon as aforesaid from this date." Counsel for the defendant contend that the evidence did not show that the amount in question was necessarily expended and was customary and reasonable.

Bither testified that the custodian was in charge 345 days; that he had experience in levies made in other cases and was familiar with that kind of work, and that the usual and customary charge for custodian's fees at that time in Chicago was $4 a day. That evidence, we think, taken in conjunction with the actual return of the sheriff, properly and sufficiently shows the expense incurred by the sheriff in keeping a custodian in charge of the property levied upon.

Counsel for the plaintiff did not rely entirely upon the sheriff's return for the purpose of determining the amount of the custodian's fees as was done in the case of *Fox v. Oriel Cabinet Co.,* 70 Ill. App. 322. Then, too, that case was tried on a suggestion of damages before the chancellor. The instant case is a suit on the bond itself, as we have said above, and not a suggestion of damages under section 12, chapter 69 of the Statutes, and, in view of the express language of the bond, all that was necessary was that the plaintiffs should make reasonable proof as to the custodian's fees. That they did, and we think the trial judge was justified in considering it sufficient.

It is contended that the trial judge erred in refusing to permit evidence on the part of the defendant to be introduced tending to show that the building, in which the property was located which was levied upon, was a fireproof building and that, therefore, a custodian was unnecessary. The sheriff had the custody of the

property and was responsible for its safekeeping, and it would seem that in protecting it by means of a custodian he was merely pursuing the usual and customary course. Further, the bond sued upon covers, expressly, expenses "incurred by said sheriff in keeping a custodian in charge of the property levied upon aforesaid from this date." We think, under the circumstances, the defendant is estopped from disputing the right of the sheriff to preserve the property as he did by means of a custodian.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

THOMSON, P. J., and O'CONNOR, J., concur.