EDMUND O. HASCHENBERGER, APPELLANT, V. CHARLES DENNIS ET AL., APPELLEES.

FILED APRIL 25, 1929. No. 26514.

*Sterling F. Mutz,* for appellant.

*Perry & Van Pelt, Richard O. Johnson* and *Clark Jeary,* contra.

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON and DAY, JJ., and BLACKLEDGE and REDICK, District Judges.

DAY, J.

This is an action brought by Haschenberger against Dennis to recover possession of a note and mortgage of $13,500 in which Aspegren and the Independent Lumber & Coal Company were joined as defendants. Haschenberger was the owner of the note and the mortgage, which he traded to Dennis for a number of Lincoln properties. He indorsed the note. Dennis was indebted to the lumber company in the sum of $5,363.19. Dennis transferred the note and mortgage to the lumber company in payment of this indebtedness, which in turn transferred to Aspegren, one of the parties in the partnership lumber company.

The trial court found that Haschenberger was entitled to a decree of rescission as to his contract with Dennis because Dennis had not complied with his agreement to complete the building of the houses involved by April 1, 1927, as provided by said contract of exchange. As to Dennis, therefore, Haschenberger was entitled to a return of his $13,500 note. But the court further found that Aspegren was a holder in due course, without notice, of said note to the extent of $5,363.19, and since Haschenberger would eventually be liable to Aspegren on his indorsement for that amount, the court entered a judgment in his favor against Dennis for an identical amount. Dennis has not appealed from this judgment. Haschenberger has appealed from the finding and judgment of the court against him in favor of Aspegren.

Prior to the submission of this case appellee Aspegren filed a motion to dismiss the appeal because the appellant had recognized the validity of the judgment and therefore waived his right to appeal therefrom. This motion was submitted with the case. As against Dennis the appellant prevailed in the lower court. He was found to be liable to Aspegren upon his indorsement of the note transferred from Dennis to the extent of $5,363.19. In order that Haschenberger might have the relief to which the court found him entitled as against Dennis, the decree provided that he should have a judgment against Dennis for the amount he was required to pay Aspegren. At that time Haschenberger had two methods of procedure open to him—he could prosecute his appeal or he could levy upon the property of Dennis. He undertook to save his right to appeal. He also caused an execution to issue upon his judgment against Dennis, when Dennis did not supersede. If he had succeeded in collecting from Dennis, he could have applied it upon the Aspegren judgment against him and then he would not need to avail himself of an appeal. Dennis claimed a homestead exemption as to the property levied upon by the sheriff. Haschenberger then petitioned the district court for the appointment of appraisers to determine whether the

homestead claim was valid. The execution was issued February 9, 1928, and on April 15, following, Haschenberger dismissed the proceedings without prejudice and abandoned his efforts to collect the judgment from Dennis. He had not been paid and had not received anything on his judgment.

The question presented by this phase of the case is whether Haschenberger has waived his right of appeal because he undertook to avail himself of a fruitless remedy. It is conceded that if appellant Haschenberger had received any benefit from the execution proceeding against Dennis or had accepted payments on the judgment, then a different situation would present itself.

"In order to create an estoppel *in pais* the party pleading it must have been misled to his injury; that is, he must have suffered a loss of a substantial character or have been induced to alter his position for the worse in some material respect. As otherwise expressed, where no available right is parted with and no injury suffered there can be no estoppel *in pais*. And *a fortiori*, an act clearly beneficial to the person setting up the estoppel cannot be relied on." 21 C. J. 1135, sec. 136.

There must be a clearly expressed intention of the appellant to abandon his appeal. The waiver of the right must be intentional. It cannot be waived by one who, as a result of a mistake or ignorance, attempts to pursue the wrong remedy. He may, when he finds that he has made the wrong selection, without prejudice dismiss his proceeding and pursue another remedy, which he has not abandoned intentionally nor waived. *Theisen v. Peterson,* 114 Neb. 150; *Lamb v. Rooney,* 72 Neb. 322; *La Borde v. Farmers State Bank,* 116 Neb. 33. In the instant case, when Haschenberger undertook to enforce payment to be made upon some real estate belonging to Dennis, the said Dennis moved into and claimed it as his homestead. When Haschenberger found that his effort to collect from Dennis was thwarted, he dismissed the proceedings and continued the prosecution of his appeal against Aspegren. The appellee

places great reliance upon the authority of the case of *Merchants Nat. Bank v. Quinton,* 9 Kan. App. 882. This case and the cases cited in the decision are not controlling in this case. This case might apply, if Dennis, against whom the execution was issued, were complaining; if the appellee had suffered any loss or had been misled to his injury. But where there was a mistake as to the remedy pursued and nothing was collected and the proceeding was dismissed without prejudice; where the appellee has not been misled to his injury and his position is not worse in any material respect; where the act, if it had been successful, would have been clearly beneficial to the appellee, this court will not dismiss an appeal upon his motion.

We now proceed to consider this case upon the merits as presented by the appeal. If Aspegren is the purchaser of the note in good faith, for value, before maturity, and without notice of any defense thereto, from Dennis, a holder and not the maker, the judgment of the trial court is correct and should be affirmed. Section 4643, Comp. St. 1922, provides: "An indorsement which purports to transfer to the indorsee a part only of the amount payable * * * does not operate as a negotiation of the instrument." The purpose of this statute is to prevent portions of the note from being assigned to and divided into parts so as to subject the party liable to several actions. In this case the whole note was indorsed to Aspegren. The court found that he was a holder in good faith and for value only to the extent of the debt of Dennis to the lumber company at the time of the indorsement. However, in this case, the whole note was transferred by indorsement to Aspegren. No one but Aspegren could have maintained an action upon it against the maker or the indorser. *Haas v. Bank of Commerce,* 41 Neb. 754. Only when the question arose as to whether Aspegren was a holder in due course, before maturity, for value, without notice of any infirmity, could he be considered an innocent holder of a part of the note. He was not in fact the holder of a portion of the note, but the holder of the entire note, but only to the extent of the

amount theretofore paid by him without notice of any infirmity. In other words, he had paid the amount Dennis owed him for the note and in addition thereto he was to pay Dennis the difference between that amount and the face value of the note when he collected it, or, in lieu thereof, to furnish Dennis material to complete the houses. This is a vastly different transaction from indorsing a portion of a note. Therefore, while a portion of a note cannot be negotiated by indorsement, where the whole note is transferred, the transferee will be deemed a holder, in due course, to the extent of the amount theretofore paid by him. Comp. St. 1922, sec. 4665; *Howells State Bank v. Hekrdle*, 113 Neb. 561. Haschenberger contends that, if Aspegren is a *bona fide* purchaser for value, it can only be so to the extent of the amount for which he has paid prior to notice. He cites *Nebraska Moline Plow Co. v. Blackburn*, 74 Neb. 246, in which our court held: "One is not a *bona fide* purchaser for value until he has actually paid the purchase price or become irrevocably bound for its payment." This note came to Aspegren, through the lumber company, in which he was a partner, and which company at the time owed him more than Dennis owed the company, so that, so far as the negotiability of the note is concerned, the situation of Aspegren and the lumber company is identical. They took the note in payment of a preexisting debt, and it is urged that they did not part with anything. "An indorsee of a negotiable instrument, who takes it before maturity in part payment of a preexisting debt, and credits it thereon, is a purchaser for value in the due course of business." *Smith v. Thompson*, 67 Neb. 527; *Second Nat. Bank v. Snoqualmie Trust Co.*, 83 Neb. 645. It is vigorously urged that, at the time this suit was brought, Aspegren and the lumber company could still have filed their mechanics' liens, and said suit was notice to them of an infirmity, and they could have filed their mechanics' liens against the property. It is clearly evident from the record that they accepted this note as a settlement of the account. Such a course would have been inconsistent to their posi-

tion in this case. If they accepted this note as payment for their account, they had no account against Dennis for which to file a lien.

Since we have determined that Aspegren is a purchaser for value of the note in question to the extent of the amount he had paid for said note, which was the amount of the pre-existing debt of Dennis to the lumber company, it is now necessary to consider whether he was a purchaser in good faith. We read in the record that Dennis was indebted to the lumber company for material used and that Aspegren and his partner, Skold, had been exerting themselves to collect the account. Dennis told them that he had traded certain houses, which he was building, for this note for $13,500; that he did not have any money and nothing of value except this note. He offered them this note in payment of his account. The account was for material used by Dennis for the purpose of building the houses involved herein, which he had traded to Haschenberger for this note. Skold of the lumber company took this note to more than one party in an effort to dispose of it. One of them was their banker who was also banker for Haschenberger. Aspegren and the lumber company inquired of the banker as to the genuineness of the signature and the liability of the indorser, Haschenberger. Let it be noted that there is no evidence of fraud in the transactions between Haschenberger and Dennis. The trial court based the rescission, and rightly so, upon the failure of Dennis to complete the houses upon April 1, 1927. On March 30, 1927, the note and mortgage were sold, assigned and delivered to the lumber company and by it to Aspegren. At that time the lumber company was indebted to Aspegren in a sum in excess of the consideration passing from them to Dennis, and this note and mortgage were accepted by Aspegren as part satisfaction of said indebtedness.

The appellant contends that Skold, a partner in the lumber company, had notice of the infirmity in this note, and that his knowledge was that of the lumber company and also of Aspegren. To determine whether Aspegren was a

purchaser in good faith, it is necessary to examine the history of the transaction immediately preceding the transfer of the note. When this note was first offered to the lumber company, Skold proceeded to investigate. He accompanied Dennis to at least one financial institution in an effort to sell the note and mortgage. Then, he did a very natural thing, he consulted his banker with reference to the note. He inquired from him of the ability of Haschenberger to pay and as to the genuineness of the signature of the indorser. He satisfied himself upon these two points and in addition he knew about the trade of the houses made by Dennis for it. This would account for the possession in Dennis of this note. Much is made of the fact that he learned from the banker that Haschenberger had intended to indorse the note without recourse. Skold took the note to the bank for the purpose of offering it for discount. Mr. Weil, the banker, talked to Haschenberger about the note, but the conversation had more to do with the banker's objection to his indorsement of paper. In his own language: "If I said anything it was in effect that if he was indorsing a large amount of paper in the trades it might effect his credit at the bank." There was other conversation between the banker and Haschenberger about the transaction, not entirely or clearly recalled by the banker. He did not talk to Skold or Haschenberger after the talk to Haschenberger, except to tell them they were not interested in them, but he did not remember that he told them the reason for his lack of interest. The testimony does not lead us to the conclusion that it was ever called to the attention of Skold or Aspegren that Haschenberger had been imposed on or over-reached by the indorsement.

This note was indorsed by a man of business experience, who was accustomed to the use of notes and who uses the language pertaining to notes, apparently with a knowledge of its significance. In addition, it seems to have been understood that the note was to have been hypothecated by Dennis to raise money to complete the building of the houses in this controversy. We are of the opinion that Skold and

Aspegren made more than the usual investigation in regard to this note. They did not ascertain facts and circumstances which should have excited suspicion in the mind of a prudent man. That alone would not have been sufficient to defeat a recovery. *Howells State Bank v. Hekrdle,* 113 Neb. 561.

The evidence in this case has been examined and stated in this opinion at some length, and does not show that Aspegren took this note under circumstances showing bad faith; that is necessary to impute bad faith. *Riverton State Bank v. Walker,* 113 Neb. 718. A purchaser in good faith must be one who purchased with due regard for the rights of the maker. Was the purchaser in this case required to talk the matter over with Haschenberger to determine whether he intended the legal effect of his act? Haschenberger, himself, had not decided that he wished to rescind with Dennis until some time later.

As suggested by the appellant, we have at all times been mindful that the central proposition may be stated thus: "Is Aspegren an innocent purchaser for value without notice of the $13,500 note, to the extent of $5,363.19, as held by the district court?" We have so concluded, and that the judgment of the trial court should be affirmed.

AFFIRMED.

Note—See Notes, 3 R. C. L. 1032; 6 R. C. L. Supp. 214.