(No. 33432

HOWARD SCHIEN, Appellant, *vs.* THE CITY OF VIRDEN *et al.,* Appellees.

*Opinion filed March 24, 1955—Rehearing denied May 16, 1955.*

SNELL & SEYFRIT, and HEMPHILL & KELSEY, both of Carlinville, for appellant.

JASPER S. GULLO, of Springfield, for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Plaintiff here seeks to enjoin the defendant municipal corporation from leasing a portion of a tract of land, situated in the city and dedicated to public use, to another municipal corporation, a fire protection district, for the purpose of erecting thereon a fire house. The trial court, after hearing, found the equities in favor of the defendants, dissolved a temporary injunction which had been issued, dismissed the complaint for want of equity and awarded the defendants attorney fees.

Plaintiff-appellant contends the court erred in the decree entered because (1) the village authorities have no power or authority to lease land dedicated to public use, (2) if there is such a power in the village a lease for the purpose of constructing a building thereon would be a diversion from the intended use of the tract, and (3) construction of a fire house thereon would be a diversion from its intended use.

The law as to the use of land dedicated for public use in this State is well settled. A specific or restricted dedication can be used only for the use intended while an unrestricted dedication can be used for any purpose which the municipal authorities or the legislature may determine, so long as it is a public use. *City of Chicago* v. *Ward,* 169 Ill. 392, 412; *Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet,* 79 Ill. 25; *Village of Riverside* v. *MacLain,* 210 Ill. 308, 327.

The controversial questions usually presented in this type of case are whether the dedicated use is restricted or unrestricted, and what was the intention of the dedicator. When that intention is determined, it is controlling. *Village of Princeville* v. *Auten,* 77 Ill. 325.

In the instant case the only evidence of the dedication or of the dedicator's intention was the plat filed by the proprietors of the town of Virden in 1852. This plat laid out city blocks, divided into lots, and streets and alleys. The subject property consisted of one city block, in the approximate center of the platted town, which was not numbered or divided into lots and on which the proprietors wrote "Public Ground." The plaintiff's complaint alleged that the town, and later the city of Virden, assumed control of this block and operated it as a park. The answer denied that the property was dedicated or used as a park and alleged that this was an unrestricted dedication and, while a portion of it had been used for park purposes, other parts had been and were used for other public purposes.

The evidence showed that this property was controlled and maintained by first the town and then the city of Virden. Witnesses testified that prior to 1900, a town house and calaboose were erected thereon, were subsequently torn down and a city hall was erected. The city hall has been used for the offices of the city clerk, police magistrate, and water department of the city, the city jail and for the council meetings. Prior to the creation of the fire protection district it housed the city's fire engines, that portion now being used as a garage and workshop. The block is crisscrossed by cement walks and the city provides seats or benches thereon for the use of the public. There is a bandstand in the southwest portion of the block and the property has been used for band concerts, public and organization gatherings. The tract is variously referred to as the city park, public ground, city square, and public square. The evidence also showed that the original dedicated block had been reduced in size, portions having been taken to widen the surrounding streets.

It seems evident from the evidence that the city authorities have in the past utilized this property for whatever city or public use they deemed advisable and the public has acquiesced in that use. Use of the property for the erection of a city hall, its use for offices, the city jail, housing fire engines and a garage and workshop are all uses inconsistent with and violative of a dedication for park purposes.

In *Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet,* 79 Ill. 25, (1875) this court held that where the only dedication is as "public ground," it is an *unrestricted* dedication to public use. We see no reason to overrule that holding. It would not be unreasonable to assume the proprietors of the town foresaw the necessity of public buildings and intended the use of this tract for that purpose. Nor is there any reason why they could not have specifically designated the tract as a public park or placed restrictions thereon if they had so intended. At

page 36 of this opinion the court stated "The dedication was simply as 'public ground,' denoting that it was for a public purpose, and the long and universal acquiescence in the use of the ground for the public purpose of a railroad, affords evidence that such use is in consistency with the design of the dedication."

In the instant case the identical dedication as "public ground" and the public acquiescence in the use of the ground for the necessary town and city buildings are sufficient to consider it a dedication for such purposes. A building to house fire-fighting equipment would be a necessary public building, the property has in fact been used for that purpose, and if the city council determined that such building was a proper public use, it would be consistent with this dedication.

The question then arises if the municipal authority which controls the dedicated property could devote it to that use, can it grant the right to another municipality?

The Virden Fire Protection District was organized in 1950 as a municipal corporation under the laws of this State and the entire city of Virden is within such district. The city has ceased to maintain fire-fighting equipment and this function has been taken over by the district which assumes the function of providing fire protection for the entire public within its boundaries. The district proposes to erect a building on the southeast corner of the block, according to plans to be approved by the city council, for the housing of the district's fire-fighting equipment. The parties stipulated that the city council has voted to lease the necessary ground to the district for this purpose, if it can legally do so.

The universal rule is that a municipality holds dedicated property in trust for the public to be used for the purposes for which it was dedicated, and it has no power or authority to convey or lease any part thereof. (63 A.L.R. 614; 26 C.J.S. page 142; *City of Alton* v. *Illinois Trans-*

*portation Co.* 12 Ill. 38; *City of Quincy* v. *Jones,* 76 Ill. 231; *McPike* v. *Illinois Terminal Railroad Co.* 305 Ill. 298.) Not even the legislature can authorize the municipality to so alienate its interest in the dedicated property. (*Illinois Central Railroad Co.* v. *Illinois,* 146 U.S. 387.) But it has been held that the legislature may authorize a city to lease a part of a park where the free use by the public of the land leased is not prevented. (18 A.L.R. 1271; 63 A.L.R. 493.) And a lease by a city has been sustained where it results in a furtherance of the public use, and a lease of "common land" not granted into private ownership and not needed for public purposes has been sustained. 63 A.L.R. 493; 43 L.R.A. (N.S.) 1139.

Property dedicated to a certain municipality is not restricted to its use by the residents of that municipality. The people of the State generally have an equal right to enjoy it. *McPike* v. *Illinois Terminal Railroad Co.* 305 Ill. 298.

In the instant case the portion of the block upon which the fire house is to be erected had formerly been occupied by the town house which had been torn down. This part of the land, according to the evidence, was low and wet and not suitable or usually used by the public. The municipal authorities determined it was not needed for the public purposes for which that municipality was using the property. The proposed use of the property by the fire protection district is as much a public use, as we have above determined, as the use the municipality was devoting it to.

Under these circumstances we believe that permitting the erection of the fire house on this portion of the tract, for the benefit of all the citizens of the district, would be in furtherance, rather than restrictive, of the public use to which the property was dedicated. So long as the trustee municipality does not deprive itself of its public duty to devote the property to a proper public use, we see

nothing in the basic principles applicable to dedicated property to prevent that purpose being accomplished as here contemplated.

The appellant, to support his theory that the city council has no authority to sell or lease land dedicated to public use, cites *City of Alton* v. *Illinois Transportation Co.* 12 Ill. 38, and *McPike* v. *Illinois Terminal Railroad Co.* 305 Ill. 298. The *City of Alton case* did not concern the question of an attempted conveyance by the city of dedicated land but was an ejectment suit by the city to enforce a dedication to the city of a tract of land for a public landing on the Mississippi River. As to the question of alienation by the city, the court held that, since the city could not dispose of the dedicated property "for her own exclusive benefit," it could not be barred from claiming the land by the Statute of Limitations. In the *McPike case,* a suit for an injunction was brought by an individual, who claimed to have a lease from the city on certain premises known as public city commons, to prevent the defendant railroad from trespassing on his lease. The court held the plaintiff could not maintain his suit because he had no valid lease on the property, it being a lease of public premises to a private individual for private purposes.

Neither of these cases hold that a lease to another municipality for a proper public use would be invalid. In the *McPike case* the defendant railroad claimed a valid franchise from the city to construct its tracks on the public commons. The master in chancery found such franchise valid. The chancellor approved the master's report but made no specific finding on the validity of the franchise the city had given to the railroad company. This court, in that case, found it unnecessary to pass upon the validity of that franchise and refused to do so.

The primary reason for the rule against the municipality alienating its interest in the dedicated property is that it violates its trust to control and devote the property

to its intended use. This reason would cease to bear weight against another municipality using the property for the dedicated purpose if the municipality to whom the dedication was made retained such control over the property that it could always prevent an inconsistent use. In *Illinois Central Railroad Co.* v. *Illinois,* 146 U.S. 387, the court, in discussing the validity of a grant of submerged land in Lake Michigan, stated that this was public land held by the State in trust for the public and could not be alienated "except as to such parcels as are used in promoting the interest of the public therein, or can be disposed of without any substantial impairment of the public interest in the lands and waters remaining." (Page 453.) And the court recognized the right of the State to grant the use of the lands to the railroad in exchange for the railroad improving the harbor facilities so long as the legislature determined that was the best use for the public interest at that time. The lower court treated the attempted grant as a license to the railroad to use the property until the legislature determined otherwise and the lower court's decrees were affirmed.

In the case before us the record is indefinite and insufficient to determine the exact rights which the city of Virden proposes to grant to the Virden Fire Protection District. The complaint for injunction alleges the city council proposes to sell or lease a parcel of the public ground. The answer alleges "that the defendants are in agreement to legally permit and authorize the construction of a fire house on a portion of the ground." The parties stipulated that the council had passed a motion to lease the portion of the ground desired, "if it could be done legally," and that the council would approve the plans and "vote to lease or in any other legal manner available to them grant permission to the Virden Fire Protection District to erect a fire house in the City Park." In accord with our views as herein expressed, injunction should not

issue to restrain the city from entering into an arrangement with the fire protection district for the construction of this building so long as the city retained control of the use of the premises to perform its trust to the public. Of course, injunction would issue to prevent a conveyance of the fee in the property but there was no proof whatever that this was threatened or even contemplated. The trial court properly dismissed the complaint.

The trial court, after hearing evidence, awarded appellees attorney fees in the sum of $200 as damages as provided by section 12 of the Injunction Act. (Ill. Rev. Stat. 1953, chap. 69, par. 12.) Appellant contends the temporary injunction was never dissolved and therefore no damages are assessable. The appellees have filed a cross appeal on this award claiming the amount of the attorney fees is too small and that the court erred in denying other suggestions of damages which included $3000 for delay in the construction of the building, $2400 for rental expended to house the fire-fighting apparatus and $900 for defendants' time and necessary expenses incurred.

Section 12 of the Injunction Act provides: "In all cases where an injunction is dissolved by any court of chancery in this State, the court after dissolving such injunction, and before finally disposing of the suit, upon the party claiming damages by reason of such injunction suggesting, in writing, the nature and amount thereof, shall hear evidence and assess such damages as the nature of the case may require, and to equity appertain, to the party damnified by such injunction, and may award execution to collect the same: Provided, a failure so to assess damages shall not operate as a bar to an action upon the injunction bond."

Prior to the enactment of this statute damages for the wrongful issuance of a temporary injunction were recoverable by a legal action on the bond. (*Warner* v. *Wende,*

228 Ill. App. 153.) The purpose of the statute was to provide a summary mode of assessing damages for the *wrongful* issuance of a *temporary* injunction upon its *dissolution before final judgment.* The statute applies only to temporary injunctions (*Chicago Title and Trust Co.* v. *De Lesaux,* 336 Ill. 522,) the temporary injunction must have been wrongfully issued (*Elder* v. *Sabin,* 66 Ill. 126; *Marks* v. *Columbia Yacht Club,* 219 Ill. 417,) and it must be dissolved before the cause is heard on the merits for final judgment. *Shackleford* v. *Bennett,* 237 Ill. 523; *People ex rel. Thrasher* v. *Eisenberg,* 288 Ill. 304; *Abel* v. *Flesher,* 296 Ill. 604. To understandingly interpret and apply this statute it must be kept in mind that in a suit for a permanent injunction, if a temporary injunction issued prior to the determination on the merits, separate and distinct issues are involved. The issues as to issuance of the temporary injunction are not dependent upon the determination on the merits. A temporary injunction may be wrongfully issued although plaintiff prevails in his suit for a permanent injunction. (*Schuler* v. *Wolf,* 372 Ill. 386,) and the temporary injunction may rightfully issue although plaintiff does not sustain his suit on the merits. (*Nestor Johnson Mfg. Co.* v. *Goldblatt,* 371 Ill. 570.) Damages claimed under this statute are therefore based on the wrongful issuance of the temporary injunction, and cannot be assessed until there has been a legal determination that the temporary injunction was wrongfully issued. This is attained by the dissolution of the temporary injunction before the determination on the merits. Where the cause is heard on the merits before the temporary injunction is dissolved, if a permanent injunction is granted the temporary is not thereby dissolved but is merged with the permanent injunction (*Gage* v. *Parker,* 178 Ill. 455;) if a permanent injunction is denied and the complaint dismissed, the temporary injunction is not thereby dissolved, it has served its purpose and ex-

pires. It is provisional in character and becomes *functus officio* when the cause is heard on its merits. *Schuler* v. *Wolf,* 372 Ill. 386.

If the temporary injunction is not dissolved before the hearing on the merits, if it is merged into the permanent injunction when plaintiff prevails, or if it becomes *functus officio* by reason of the complaint being dismissed there has been no legal determination that it was wrongfully issued and there can be no assessment of damages by this summary procedure. *Schuler* v. *Wolf,* 372 Ill. 386.

This statute, providing an unusual and summary remedy, should be strictly construed and applied. (*Rice, Friedman and Maxwell Co.* v. *Goldberg,* 26 Ill. App. 603.) The language of the statute is clear and unambiguous. It clearly applies only where the injunction "is dissolved" and "before finally disposing of the suit."

In the instant case defendant's motion to dissolve the temporary injunction was denied. That denial was a judicial determination that it was not wrongfully issued. Defendant did not appeal that judgment, although an appeal is expressly authorized by statute (Ill. Rev. Stat. 1953, chap. 110, par. 202,) and the judgment therefore became the law of the case. The decree subsequently entered by the court states "This cause having come on to be heard this 30th day of November, A.D. 1953, upon the complaint and answer * * *" which shows there was a hearing on the merits as to the issuance of a permanent injunction. When the cause was heard upon the merits the temporary injunction had served its purpose and expired regardless of how the issues were then to be determined. The temporary injunction having then expired there was no existing order to dissolve. Nor do we know of any law which would authorize the court, after the hearing on the merits, to reverse its previous determination that the temporary injunction had not been wrongfully issued. That issue was determined by the denial of the motion to dissolve the

temporary injunction and defendant's failure to appeal. *Montgomery Ward & Co.* v. *Department Store Employees,* 348 Ill. App. 198.

In *Nestor Johnson Mfg. Co.* v. *Goldblatt,* 371 Ill. 570, the chancellor dissolved the temporary injunction on defendant's motion and on appeal the Appellate Court reversed and reinstated the injunction. A second motion to dissolve was then denied by the court and the defendant failed to appeal. The order denying the section motion to dissolve had added to the denial order the words: "Until the hearing of evidence on bill and answer is concluded." On his claim for assessment of damages, after the chancellor had entered a decree granting a permanent injunction which the Appellate Court reversed with dismissal of the complaint, defendant attempted to avoid the finality of the denial of the motion to dissolve which he failed to appeal, contending that the words added to the denial order constituted a continuance of, and not a denial of, the motion.

In rejecting such a contention, this court, at page 573 of the opinion stated: "We are unable to see how this language, appended to the order, can have any meaning whatever as affecting the court's refusal to dissolve the temporary injunction. Since the only purpose of a temporary injunction is to maintain *status quo* until after the hearing on the main issue, the words quoted did not limit the effectiveness of the temporary injunction. They were, in fact, meaningless. When the hearing on the merits of the case was had and completed, the decision of the chancellor was given on the merits of the controversy in the main case and on the question whether a permanent injunction should issue. Upon the completion of testimony and the decision of that issue, the temporary injunction previously issued was not dissolved but became *functus officio*. The chancellor gave no further consideration to it but determined the issuance of a perpetual injunction on the

506

merits. As he ordered a perpetual injunction to issue, the temporary injunction was not thereby dissolved but became merged in the permanent injunction. (*Gage* v. *Parker*, 178 Ill. 455.) Had he denied the permanent injunction, the temporary injunction, having served its purpose and expired, could scarcely be said to have been dissolved by such order. *Lambert* v. *Alcorn*, 144 Ill. 313; *Milligan* v. *Nelson*, 188 id. 139."

In the case before us the court denied defendant's motion to dissolve the temporary injunction, that order was not appealed and therefore became a final judgment that the temporary injunction was properly issued. Not having been wrongfully issued and not having been dissolved prior to the hearing on the merits of the case, damages are not assessable under section 12 of the Injunction Act.

The decree dismissing the complaint for an injunction is affirmed but that part of the decree awarding attorney fees to appellees is reversed.

*Affirmed in part and reversed in part.*