United Mail Order, Warehouse & Retail Employees Union, Local 20, Affiliated with United Retail, Wholesale and Department Store Employees of America, C.I.O., an Unincorporated Association; (and) Samuel Wolchok et al., Individually and as Members of Said Unincorporated Association, Appellees, v. Montgomery Ward & Co., Incorporated, Appellant.

Gen. No. 46,433.

First District, First Division.

June 13, 1955.

Released for publication September 15, 1955.

John A. Barr, David L. Dickson, and Charles J. Barnhill, all of Chicago, for appellant.

Urban A. Lavery, Francis Heisler, and Pearl Baer, all of Chicago, for appellees.

MR. JUSTICE FRIEND delivered the opinion of the court.

Montgomery Ward and Company, incorporated, hereinafter referred to as Ward's, appeals from an adverse judgment in the sum of $327,000, entered in the municipal court of Chicago in a first-class suit in

contract, predicated on a $1,000 injunction bond filed by Ward's in the superior court of Cook county in a proceeding initiated in 1943.

The original complaint filed by Ward's on November 9, 1943 alleged that plaintiffs (who were defendants in that proceeding and will hereinafter be referred to as the union) had conspired to libel and vilify Ward's for the purpose of injuring its business and reputation. The complaint prayed for a temporary and permanent injunction against continued publication of libelous statements, and asked for monetary damages in the amount of $1,000,000 for past libels. The union filed a motion to strike Ward's complaint and dismiss the suit, whereupon Ward's moved for a preliminary injunction. Both motions were fully argued and briefed, and thereafter, on June 25, 1945, the chancellor entered an order denying the union's motion to dismiss the action. On the same day he granted Ward's motion for a preliminary injunction, to be effective upon the approval of an injunction bond, and to remain in effect until further order of court. The temporary injunction prohibited the union and designated union members from conspiring together or acting in concert to publish untrue statements concerning Ward's for the purpose of causing its employees and customers to fear, dislike or distrust Ward's, its officers or supervisory employees. On the following day, June 26, 1945, the injunction bond sued upon in this proceeding, in the amount of $1,000, was filed and approved.

Some ten days later, on July 6, 1945, the union filed a motion to vacate and set aside the order of June 25, 1945 which denied its motion to dismiss, and which granted Ward's motion for a preliminary injunction. The court denied the union's motion, and since it refused to plead further and stated orally that it would stand on its motion to strike the complaint and dismiss the suit, the court on that day entered an order which reads in part as follows: ". . . the above-named de-

fendants having elected to stand on their Motion to Strike the complaint and to dismiss the suit, therefore the Order of June 25, 1945 is made a final order." The union appealed from the order of June 25, 1945 and the final order of July 6, 1945, and on November 20, 1946 the third division of this court, in Montgomery Ward & Co., Inc. v. United Retail, Wholesale & Department Store Employees of America, C.I.O., 330 Ill. App. 49, reversed the decrees of June 25, 1945 and July 6, 1945 and remanded the cause "with directions to dismiss the complaint for want of equity." Ward's then appealed to the Supreme Court of Illinois, which on March 18, 1948 affirmed the judgment of the Appellate Court (Montgomery Ward & Co., Inc. v. United Retail, Wholesale & Department Store Employees of America, C.I.O., 400 Ill. 38).

June 1, 1948 the union filed in the superior court of Cook county a suggestion of damages under section 12 of the Injunction Act (Ill. Rev. Stat. 1953, ch. 69 [Jones Ill. Stats. Ann. 109.360]), claiming damages of $457,750 for organizational expenses, loss of union dues, attorneys' fees and court costs allegedly incurred by reason of the temporary injunction and Ward's claim for $1,000,000 damages. Ward's on June 4, 1948 filed a motion to strike and dismiss the suggestion of damages upon the grounds, among others, that the temporary injunction had not been dissolved but had merged in the final order and become functus officio, and that the alleged damages did not arise by reason of the injunction. On June 7, 1948 the union filed a motion to dissolve the temporary injunction. Both motions were fully argued, and on June 22, 1948 the superior court entered an order dismissing the union's suggestion of damages and denying the union's motion to dissolve the temporary injunction on the ground, as stated by the court orally, that the temporary injunction entered as part of the order of June 25, 1945, merged in the final order of July 6, 1945, and as such became functus officio. No appeal was taken from that order.

Some two years later, April 25, 1950, the union filed, in the superior court, a second petition for damages which it claimed to have suffered by reason of the alleged wrongful issuance of the injunction. The items of damage claimed were similar to those alleged in the first petition filed in 1948, although the amount was increased from $457,750 to $730,000. The petition also contained additional allegations pertaining to the filing and existence of a $1,000 injunction bond. On May 15, 1950 Ward's filed a motion to strike and dismiss the union's second petition upon the same grounds as previously urged in its motion to dismiss the first petition, and for the additional reason that the order of June 22, 1948 was a final order which had previously adjudicated all the matters presented in the second petition. Pursuant to hearing, the court, on November 24, 1950, entered an order dismissing the union's petition. The union appealed from this order, and on November 14, 1952, in Montgomery Ward & Co., Inc. v. United Retail, Wholesale & Department Store Employees of America, C.I.O., 348 Ill. App. 198, the second division of this court affirmed the trial court's order of dismissal. The union then petitioned for leave to appeal to the Supreme Court of Illinois which was denied on March 11, 1953 (351 Ill. App. xiv).

Neither the Appellate nor Supreme Court considered or decided whether the temporary injunction was rightfully or wrongfully issued. In the case of temporary injunctions the statute provides a method of appeal, and this is the only way in which such an order can be set aside (Ill. Rev. Stat. 1953, Civil Practice Act, ch. 110, par. 202, sec. 78 [Jones Ill. Stats. Ann. 104.078]). Both courts had before them for review the final order of July 6, 1945, and they passed only upon the sufficiency of the complaint and held in effect with the union's contention that the complaint was utterly insufficient and that the granting of injunctive relief from the publishing of defamatory matters violated two general principles, namely, (1) that equity does

481

not have jurisdiction to enjoin the commission of crime and libels, and (2) that the constitutional guarantee of free speech as a general rule prohibits courts from enjoining actual or threatened publications such as were alleged in Ward's complaint.

On the second appeal to this court it was held that the union's claim for damages under section 12 of the Injunction Act had already been adjudicated. However, this section provides that "a failure so to assess damages shall not operate as a bar to an action upon the injunction bond." Accordingly the union still had available the right to bring an action at law on the bond. This is strictly a legal action to enforce a legal right. Lovejoy v. Stelle, 18 Ill. App. 281; Warner v. Wende, 228 Ill. App. 153. The items of damages claimed in the instant suit were the same as those alleged in the petitions filed in the superior court in 1948 and 1950, and the amount claimed for each item of damage was substantially the same as the amount claimed in the second petition filed in the superior court, but, in addition to these previously claimed items, the union asked for $70,000 to cover its attorneys' fees and court costs incurred in prosecuting the two claims for injunction damages in the superior court and for prosecuting the present case. Ward's filed a motion to strike and dismiss the union's statement of claim which was denied, whereupon Ward's answered. Hearing by the court resulted in the judgment entered February 23, 1954 for $327,000 in favor of the union, from which Ward's appeals.

The obligation of the bond is to pay $1,000 upon condition that the obligation shall be void if Ward's pays to the union the damages which it may sustain by reason of the wrongful issuing of the temporary injunction and such damages as shall be awarded against Ward's in case the temporary injunction is dissolved. Ward's contends that the union cannot recover on the bond because its condition was not

482

breached since the temporary injunction was not wrongfully issued or dissolved. This question was not before either of the courts of appeal and was not decided; but since the first opinion of this court and that of the Supreme Court both hold conclusively that Ward's complaint was inherently defective and did not support the injunctive relief sought upon constitutional and jurisdictional grounds, it would be naive to hold that the temporary injunction was rightfully issued. We are not unmindful of the rule that an interlocutory injunction is merely provisional and does not conclude a right, its effect and purpose being to keep matters in status quo until a final hearing, and that an applicant for an interlocutory injunction is not required to make out a case which will entitle him, at all events, to relief at the hearing, but it is enough if he raises a fair question as to the existence of the right which he claims and can satisfy the court that matters should be preserved until such questions can be disposed of. Nestor Johnson Mfg. Co. v. Goldblatt, 371 Ill. 570, and Schuler v. Wolf, 372 Ill. 386. However, in the Nestor Johnson case a full hearing on the merits before a master followed the issuance of the temporary injunction, at the conclusion of which the master recommended that the claim for a permanent injunction be disallowed and that the bill be dismissed for want of equity. In the present case the complaint was defective on its face and did not warrant a trial upon the merits; the relief sought was a temporary and permanent injunction. Neither of these remedies was properly available to Ward's, and the Appellate and Supreme Court so decided. In Schuler v. Wolf it was held that whether or not a temporary injunction was properly or wrongfully issued or dissolved is not dependent upon the ultimate settling of the issues, and the fact that a permanent injunction was finally issued on the merits of the cause did not determine that an order dissolving a temporary injunction was erroneous. In

both of these cases the propriety of issuing a temporary injunction was resolved upon a hearing on the merits; in neither case was there a question as to the insufficiency of the complaint to support the relief sought. Accordingly we hold that the union had a legal right to sue on the bond.

This raises two questions: (1) the nature and extent of damages claimed by the union, and (2) the propriety or impropriety of limiting the union's recovery to $1,000, the penal sum named in the bond. With respect to the first of these questions, the municipal court took evidence on the several items of damages claimed by the union for a period of approximately three years following the issuance of the temporary injunction on June 25, 1945. It is clear, however, that the temporary injunction was effective only from June 25, 1945 to July 6, 1945, when it became functus officio by reason of the final order. Accordingly the union would be entitled to damages only for that eleven-day period.

■ Can the union, in any event, recover more than $1,000, the penal sum named in the bond? This being a contract action, Ward's liability is limited to its doing what it covenanted to do. This is an elementary principle of contract law. The only covenant of the contract is that Ward's and its surety "are held and firmly bound unto" the union "in the sum of One Thousand and no/100ths Dollars ($1000.00) to be paid" the union "for which payment well and truly to be made, we bind ourselves, jointly and severally." Following the recital of this obligation to pay $1,000 is the statement of the condition that the obligation to pay $1,000 shall be void "if" Ward's pays to the union the damages which it may sustain by reason of the wrongful issuing of the temporary injunction and such damages as shall be awarded against Ward's in case the temporary injunction is dissolved. The only language concerning the payment of damages preceded by the conditional word "if" merely sets the condition by which

484

it is to be determined whether the covenant to pay $1,000 is to be effective or void; there is no unconditional promise by Ward's to pay the damages which may be sustained by the union. Under Illinois decisions the stated penalty of a bond fixes the limit of recovery in an action on the bond as against both the principal and surety, regardless of the amount of damages which the obligee may have sustained. In the early case of Freeman v. People (1870), 54 Ill. 153, the trial court entered judgment for more than the $500 face amount of a bastardy bond. The Supreme Court, in reviewing the judgment, said that "the obligors can in no event be held liable on this bond for more than the penalty. That is the extent of their undertaking. The obligee can not recover damages beyond that sum, whatever be the amount of damages sustained." In Kerz v. Wolf (1907), 131 Ill. App. 387, suit was brought on an injunction bond in the face amount of $500. The trial court instructed the jury to find the issues for the plaintiffs, and to "assess the plaintiffs' damages at such sum, not exceeding $500.00." The Appellate Court approved these instructions, saying: "These instructions stated correct legal principles to guide the jury in their admeasurement of damages . . . The value of the legal services rendered in procuring a dissolution of the injunction in question was $750.00 . . . ; therefore, whether the appearance and stenographer's fees testified about and set down in the bill of particulars, were proper charges, become immaterial in view of the verdict of $500.00, the limit of a possible recovery in an action on the bond . . ." Text writers on the subject of damages and injunction state the same rule. Sutherland on Damages (1916), 4th ed., vol. 2, par. 478, p. 1567, comments on this type of bond as follows: "The condition of a penal bond *not being an affirmative undertaking, but only at law an optional defeasance of the bond,* the penalty fixes the extent of liability in case the condition is not per-

485

formed." (Emphasis ours.) "It is fully settled . . . , that in an action on a bond no damages in gross can be recovered, against either principal or surety, beyond the amount of the bond." Sedgwick on Damages (1912), 9th ed., vol. 2, par. 677, p. 1386.

The union argues that the obligee in a penal bond has an option to bring either an action of debt for the amount of the penalty named in the bond, or an action of covenant for the damages which the obligor has contracted to pay, and that where the obligee brings an action of covenant for damages he is not limited by the stated penalty of the bond. Various decisions are cited to support this contention. However, this would be true only if there was a covenant upon which to base the action. The only covenant or promise of the bond in suit is to pay $1,000, subject to a condition of defeasance; there is no covenant or promise to pay any damages beyond the sum of $1,000. As we view it, the fallacy of the union's argument is in treating the condition of the bond as though it were a covenant. Emphasis is laid by the union on Lowe v. Peers (1768), 4 Burrows (K. B.) 2225, which was an action upon the following marriage contract executed by one Peers: "I do hereby promise Mrs. Catherine Lowe, that I will not marry with any person besides herself; if I do, I agree to pay to the said Catherine Lowe $1000 within three months next after I shall marry any body else." Ten years after the contract was executed, Peers married another woman. The question involved was not whether plaintiff in the suit on the bond could recover from the principal the actual damages suffered or whether the liability of the principal would be limited to the penalty of the bond, but whether the plaintiff could recover the penalty provided in the contract without proving actual damages in that amount. It thus appears that this case did not involve a recovery for a sum greater than the penalty, and it should be noted that Lord Mansfield was careful to point out

486

that "where the covenant is 'to pay a particular liquidated sum,' a court of equity cannot make a new covenant for a man; nor is there any room for compensation or relief."

The union cites Martin v. Taylor (1803), Fed. Cas. No. 9166, and Lawrence v. United States (1841), Fed. Cas. No. 8145, as leading federal cases on the question. The Martin case involved an express covenant to do certain acts in connection with the transfer of land, and this covenant was secured by a penalty. In the Lawrence case the court reversed the judgment in excess of the stated penalty of a bond which had been given to secure the faithful performance of the office of a deputy postmaster, citing Lord Mansfield's Lowe v. Peers, with the observation that "this point seems not to have been involved in that case; and it must be regarded, rather as a dictum by his lordship, than a solemn decision." The federal rule that recovery on an injunction bond is limited to the stated penalty of the bond seems to be well established. In United States v. Lewis Pub. Co. (1908), 160 Fed. 989, which involved an injunction bond, the court said that "if a bond is required to be given, its penal sum is the maximum risk assumed," and in the more recent injunction bond case of International Ladies' Garment Workers' Union v. Donnelly Garment Co. (1945), 147 F.2d 246, cert. den. 325 U. S. 852, the court said that "the weight of authority in the federal courts is that a recovery in excess of the maximum amount stipulated in a judicial bond is not permissible."

The union further cites New Holland Turnpike Co. v. Lancaster County (1872), 71 Pa. 442, and other Pennsylvania cases. All these cases involved bonds in which the obligor expressly covenanted to do a particular thing, which covenant was secured by a penalty. None of the cases involved a common defeasance bond of the type in suit here, and it should be noted that the Pennsylvania court was careful to make this dis-

487

tinction in the New Holland Turnpike Co. case: "It is not a mere bond in a penalty—on a condition to be void upon the doing or not doing a collateral act, either by the obligor or a third party. . . . In such cases it may be conceded that the penalty of the bond is the limit of liability on the instrument itself . . ."

The Illinois decision upon which the union chiefly relies as controlling is Kohlsaat v. Crate, 144 Ill. 14. This was not an action on an injunction bond, and the question of the extent of the obligor's liability on the bond was not before the court and was not considered; it involved, rather, a statutory proceeding in the equity court to recover injunction damages under section 12 of the Injunction Act, and all the court held was that the statutory proceeding was independent of the bond and that the provisions of the bond did not control and had no bearing on the amount which might be recovered in a proceeding under the statute. It is unfortunate for the union that it did not pursue its statutory remedy to appeal from the wrongful issuance of the temporary injunction and to claim damages under the procedure prescribed by the statute, but the present case is an action brought on the bond itself, and under the authorities as we view them the union is limited by the express provisions of the bond.

■ The remaining point urged as ground for reversal is that the union as an unincorporated association is without legal capacity to sue in its own name. Plaintiffs in this proceeding are fifteen individuals and the United Mail Order, Warehouse and Retail Employees Union, Local 20, an unincorporated association (in this opinion both the union and the individuals have been referred to as the union). It is argued that under the common-law rule an unincorporated association has no legal entity distinct from its members and can neither sue nor be sued at law in its association name. Various decisions, including O'Connell v. Lamb (1895), 63 Ill. App. 652, are cited. In the

O'Connell case the labor union was named obligee in a surety bond issued for the treasurer of the union. That official defaulted, and several members of the union sued on the bond for the benefit of all the members. The trial court sustained a demurrer to the complaint, which was affirmed by the Appellate Court, holding that suit can be maintained only in the names of all the members, however numerous. We concur in this rule of law.

For the reasons indicated we have concluded that the judgment of the municipal court should be reversed and the cause remanded with directions to proceed in accordance with the views herein expressed; it is so ordered.

Judgment reversed and cause remanded with directions.

BURKE, P. J. and NIEMEYER, J., concur.