SKAIDRITE ESCALONA, Plaintiff-Appellant, *v.* THE BOARD OF TRUST-EES, STATE EMPLOYEES RETIREMENT SYSTEM, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 84—0534

Opinion filed September 14, 1984.

Robert A. Barasa, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Susan C. Weidel, Assistant Attorney General, of counsel), for appellees.

JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from an order entered on administrative review, affirming a decision of the Board of Trustees of the State Employees' Retirement System (SERS) terminating plaintiff's disability compensation. Plaintiff contends that the decision (1) was an improper exercise of discretionary power by SERS; (2) violated her right to due process, since no standards were established by SERS; and (3) was against the manifest weight of the evidence.

Plaintiff is a former State employee who was a caseworker for the Illinois Department of Public Aid, performing essentially clerical duties for approximately 10 years. She took a nonoccupational leave of absence, beginning October 19, 1981, and received disability benefits from November 5, 1981, to February 2, 1982. This initial period of disability was for repeated bladder infections and hypertension, as reported by her physician at that time, Dr. Vulgaris, who also estimated that she would be able to return to work on February 2, 1982. Plaintiff made the same estimate when she filled out her application for disability benefits.

On January 26, 1982, SERS notified plaintiff that her disability benefits would be terminated on February 2, 1982, unless she submitted further medical evidence from her attending physician. In response, she submitted a report from her psychiatrist, Dr. Josep Pasic, dated January 27, 1982, stating that "Mrs. Escalona is in psychotherapy for mental and emotional reasons and disabled from work for indefinite time." She also submitted a report from a Dr. Luiz Subrack, dated February 7, 1982, stating that she was disabled for employment because of "multiple recurrent physical illness and severe emotional imbalance."

On March 23, 1982, plaintiff was interviewed by a SERS caseworker, who reported that plaintiff did not appear to be disturbed; that she does her own shopping and cooking; that except for trips to the store and weekly visits to her doctor, her activities were primarily

restricted to her apartment, where she lives alone with no outside help; and that she was a college graduate with advanced graduate study work.

In August 1982, SERS scheduled two examinations for plaintiff, by a psychiatrist and by an internist. The letters to her, however, did not clearly indicate that two distinct examinations were scheduled, and she appeared only for the psychiatric examination on August 27 by Dr. Rigaberto Rodriguez. Prior thereto, SERS informed Dr. Rodriguez of the disability for which plaintiff was receiving benefits and of the nature of her job. SERS requested his opinion, based on his objective findings, as to whether plaintiff could perform the duties of her position.

The report of Dr. Rodriguez states that plaintiff is under the psychiatric care of Dr. Pasic and takes Librium 25 mg., Lithium 300 mg., and Mellaril 25 mg.; that there is no history of mental illness in her family, and she has never been a patient in a psychiatric hospital; that she sleeps well, has a normal appetite, and has had no significant weight loss; that she denies hallucinations, delusions, and homicidal or suicidal attempts; that she is coherent, with no indication of gross motor behavior; and that she lives alone and does her own cleaning, cooking, laundry, and shopping. Dr. Rodriguez, in his report, also stated that she complained of losing her ability to concentrate at the beginning of last year and said she was getting so nervous that she could not be with people, and that she also complained of having colitis and was very uneasy about returning to work. He diagnosed her condition as "mild situational depression" and gave his opinion as follows:

> "Based on the objective findings of this examination and review of the job description, this patient would be able to return to her normal occupational duties along with being capable of performing simple routine, repetitive tasks at a competitive rate with normal amount of supervision, capable of understanding, remembering and carrying out simple instructions, capable of responding appropriately to supervisors and co-workers and to customary work pressures in a routine work setting."

After reviewing plaintiff's file and the report of Dr. Rodriguez, SERS notified her that her benefits would be terminated on September 30, 1982, because she was no longer disabled. The executive committee upheld this decision.

She then appealed, and in support thereof submitted various medical reports. The 1981 reports of Drs. Vulgaris and Wilkey referred to hypertension and repeated bladder infections, the conditions for which

disability benefits had originally been authorized. A report of Dr. Sudbrack, dated February 1, 1982, referred to the same conditions and stated that she was temporarily disabled "from her regular occupation" but not from all occupations. In a June 9, 1982, report, Dr. Sudbrack stated that he recently treated plaintiff for osteoarthritis of her knee, hypertension, and colitis, and that she was disabled and unable to perform her regular activities. Plaintiff also filed two reports from her psychiatrist, Dr. Pasic. In one dated August 25, 1982, he described her condition as "agitated depression with paralyzing anxieties" and further stated that those symptoms appeared when plaintiff dealt with the stressful activities of daily living. In a later report of September 9, 1982, he diagnosed plaintiff's condition as "Major depression, Single Episode, unspecified (DSM III, 296.20). Agitated depression with paralyzing anxieties."

On November 22, 1982, SERS directed its chief medical consultant, Dr. Edward Ference, to review plaintiff's file in order to make a recommendation regarding her eligibility for disability benefits. Dr. Ference reported on November 30, 1982, that in his review of plaintiff's file he found no evidence that plaintiff was disabled, and he further stated that no benefits were warranted. The SERS executive committee denied plaintiff's appeal on December 8, 1982, and the board of trustees ratified the decision on December 15, 1982.

Plaintiff then requested a reappeal of that decision, submitting another report dated January 12, 1983, from Dr. Pasic and a letter from him dated February 2, 1983, both of which described the plaintiff's condition, symptoms, and therapy and stated that she was unable to work.

On March 7, 1983, Dr. Ference was requested by SERS to again review plaintiff's file for purposes of the reappeal. In his evaluation, Dr. Ference stated that he had reviewed the entire file, including Dr. Pasic's latest report, and that although the reports of Dr. Pasic listed symptoms indicating an impairment, no disabling condition was shown. On March 9, 1983, the executive committee reviewed the case and denied the reappeal. The board of trustees ratified this decision at its meeting of March 24, 1983, and SERS notified plaintiff of the decision on April 5, 1983.

Plaintiff again reappealed this decision, submitting a lengthy report from Dr. Pasic dated April 20, 1983, in which he expressed disagreement with Dr. Rodriguez' evaluation of plaintiff and restated his opinion that plaintiff was disabled. Dr. Ference once more reviewed plaintiff's file and reported that Dr. Pasic again "gives no objective evidence of disability" and reasserted his belief that plaintiff could re-

turn to her employment. The executive committee denied this reappeal, and the board of trustees approved its decision.

On administrative review in the circuit court, the trial judge affirmed the SERS decision, finding it was not against the manifest weight of the evidence or contrary to law. This appeal followed.

OPINION

■ We first consider plaintiff's contention that the SERS decision is void because it was made in the absence of proper standards or guidelines. It is well established, however, that the precision of the standard set by the legislature must necessarily vary according to the nature of the particular problem involved. (*Board of Education v. Page* (1965), 33 Ill. 2d 372, 211 N.E.2d 361.) As stated in *Hill v. Relyea* (1966), 34 Ill. 2d 552, 216 N.E.2d 795, the legislature gave to the superintendents of hospitals the authority to discharge mental health patients "as the welfare of such person and the community may require." (*Hill v. Relyea* (1966), 34 Ill. 2d 552, 555, 216 N.E.2d 795, 797.) The court then held that such a standard provided adequate guidance for the superintendent's exercise of discretion and stated that it would be difficult to formulate more precise standards. Here, the factual context is very similar. In order to make a decision on eligibility for benefits, SERS must first determine whether a State employee is disabled, and the applicable statute provides that a nonoccupational disability benefit may be granted if, among other requirements, "the member is found upon medical examination to be mentally or physically incapacitated to perform the duties of the member's position" (Ill. Rev. Stat. 1983, ch. 108½, par. 14—124(2)). The legislature has therefore provided a standard which is much more objective and much more specific than the standard upheld by the supreme court in *Hill v. Relyea*. Additionally, here the legislature has also provided that any factual determination must be supported by a medical examination. We find that adequate guidance has been given by the legislature.

With respect to this contention, plaintiff also maintains that SERS improperly relied upon the opinion of Dr. Ference in reaching its decision. She argues that although functioning as chief medical consultant to SERS, Dr. Ference was actually a private person to whom discretionary power was given without properly defined terms as to how it was to be exercised. We do not believe it necessary to address this argument, however, since it is clear from the record that Dr. Ference was only a consultant who was not involved in the decision process, and that the SERS executive committee did not rely

solely on his recommendation but considered the entire file when making its decision.

Plaintiff next posits that SERS failed to comply with the requirements of the Illinois Administrative Procedure Act (IAPA) because SERS allegedly did not enact guidelines which were more specific than the standard articulated in the statute.

The IAPA provides:

> "Each rule which implements a discretionary power to be exercised by an agency shall include the standards by which the agency shall exercise the power. Such standards shall be stated as precisely and clearly as practicable under the conditions, to inform fully those persons affected." (Ill. Rev. Stat. 1983, ch. 127, par. 1004.02.)

In the context of disability determinations, however, it is our view that it would be impracticable—if not impossible—for SERS to articulate more precise standards. Since SERS must find that an individual is incapacitated to perform the duties of that particular individual's position, it appears that the type of standard demanded by plaintiff could be enacted only if SERS were to publish separate standards for each job description. Even if this were practical, such standards would eliminate the flexibility necessary for decisions of this type.

■ Where possible, SERS has published rules to further inform those persons affected by its decisions. Rule 8 pertains to disability claims. (6 Ill. Admin. Reg. 2119—21 (1982).) Section 3 of that rule defines the term "licensed physician." Section 4 lists the information which SERS requires in the physician's reports. Section 6 describes the systematic program established by SERS in order to investigate, control, and supervise disability claims. This section indicates that SERS may require, among other information, additional medical statements, independent medical examinations, and activity inspection reports. Section 7 provides that "duties of the member's position" refers to the duties of the position as of the date the member's name is removed from the payroll. We believe that SERS has provided as much guidance as possible without turning the process into a mechanical determination which would clearly be inappropriate in this context.

■ Plaintiff also asserts that the failure of SERS to enact specific guidelines constitutes a denial of due process. While, as plaintiff argues, due process requires that an act provide sufficient standards to guide the administrative body in the exercise of its discretionary power (*People ex rel. Stamos v. Public Building Com.* (1968), 40 Ill. 2d 164, 238 N.E.2d 390), it is our view, as previously discussed above,

that the statute here provided sufficient guidance to the administrative agency. Due process also requires that an act not be so vague, indefinite, or uncertain that "persons of common intelligence must necessarily guess at its meaning and differ as to its application." (*Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 300, 395 N.E.2d 1376, 1381, *appeal dismissed* (1980), 444 U.S. 1062, 62 L. Ed. 2d 744, 100 S. Ct. 1001.) However, a statute is not unconstitutionally vague if it is sufficiently definite to serve as a guide to those who must comply with it. (*Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 416 N.E.2d 1082.) Here, the statute provides that claimants must be incapacitated to perform the duties of their positions, and we find nothing in the record indicating that plaintiff could not understand from the language of the statute that in order to continue to be eligible for disability benefits, she must have a condition which rendered her unable to perform her duties. The standard articulated in the statute satisfied the demands of due process, and the rules enacted by SERS provided additional information to assist her.

■ Finally, plaintiff contends that the decision of SERS was against the manifest weight of the evidence. The Pension Code provides that review of an administrative decision concerning disability benefits is to be made pursuant to the Illinois Administrative Review Law (Ill. Rev. Stat. 1983, ch. 108½, par. 14—150), under which an agency's findings and conclusions on question of fact must be accepted as *prima facie* true and correct (Ill. Rev. Stat. 1983, ch. 110, par. 3—110).

> "The function of the reviewing court is limited to determining whether the decision of the administrative agency is contrary to the manifest weight of the evidence, which means that an opposite conclusion must be clearly evident [citation]. Where it appears that there is evidence to support the findings of the agency, its decision should be affirmed [citation]." *Pientka v. Board of Fire Commissioners* (1984), 125 Ill. App. 3d 124, 131, 465 N.E.2d 677, 682.

The factual determination made by SERS was that plaintiff's condition did not incapacitate her from performing the duties of her position. Although the various reports submitted by plaintiff's doctors indicated that she did have physical and emotional problems, SERS found that these problems would not prevent plaintiff from performing the duties of her position, a position which was clerical in nature. Plaintiff relies principally on the three reports of Dr. Pasic, her psychiatrist, for the period of time at issue here. In the first report, on

January 27, 1982, Dr. Pasic said only that "Mrs. Escalona is in psychotherapy for mental and emotional reasons, and disabled for work for indefinite time." In the second report, on September 22, 1982, Dr. Pasic stated, "Major Depression, Single Episode, unspecified" and "Agitated depression with paralyzing anxieties. These symptoms especially appear when dealing in stressful activities of daily living," and that she was unable to work. In the third report, on January 12, 1983, Dr. Pasic made no objective findings but, based upon the subjective complaints of plaintiff, diagnosed her condition as "manic depressive illness, depressed, paralyzing anxieties continue and the severe and agitated depression still existent"; and that she remained disabled and was still unable to work. SERS arranged an independent psychiatric examination of defendant by Dr. Rodriguez, who reported on August 27, 1982, that plaintiff was able to return to her normal occupational duties. Plaintiff was later examined at the request of SERS by Dr. Ference, a board-certified psychiatrist, who reported on November 30, 1982, that plaintiff was not disabled and, at the request of SERS, Dr. Ference subsequently reviewed the file—which included all of the medical reports submitted by plaintiff—and he found on March 8, 1983, that no disabling condition was shown in those reports; and then, on May 3, 1983, after again reviewing the file of plaintiff at the request of SERS, Dr. Ference found that there was no evidence of disability on her part.

In the light thereof, we cannot say that the SERS decision was without evidentiary support, nor do we believe that an opposite conclusion is clearly evident. We conclude that it was not against the manifest weight of the evidence.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

LORENZ and PINCHAM, JJ., concur.