March 24, 1999

NO. 4-98-0435

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE STATE OF ILLINOIS for the use and   ) Appeal from

benefit of CHEMCO INDUSTRIES, INC., and ) Circuit Court of

CHEMCO INDUSTRIES, INC., a California   ) Sangamon County

Corporation,                            ) No. 95L31

Plaintiffs-Appellants,        )

          v.                            )

EMPLOYERS MUTUAL CASUALTY COMPANY, a    )

foreign corporation; KIRK BROWN,        )

Secretary, Department of Transportation;)

STEPHEN B. SCHNORF, Director, Department)

of Central Management Services; FRANK )

SELVAGGIO, Department of Central Manage-)

ment Services; A. THOMAS MURARO, Chief, )

Bureau of Claims, Department of Trans- )

portation; and TED CURTIS, Manager, )

Procurement Services Division, Depart- ) Honorable

ment of Transportation, ) Jeanne E. Scott,

Defendants-Appellees. ) Judge Presiding.

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiffs, State of Illinois for the use and benefit of Chemco Industries, Inc., and Chemco Industries, Inc. (Chemco), appeal from a summary judgment entered in the circuit court of Sangamon County in favor of defendants, Employers Mutual Casualty Company (Employers Mutual); Kirk Brown, Secretary of the Illinois Department of Transportation (IDOT); Stephen B. Schnorf, Director of the Illinois Department of Central Management Services (CMS); Frank Selvaggio, a buyer with the procurement services division of CMS; A. Thomas Muraro, chief of the bureau of claims of IDOT; and Ted Curtis, manager, procurement services division, IDOT.  Plain­

tiffs sought recovery on a bond executed by Employers Mutual and for negligence of the other defendants in releasing funds to Coatings Cor­poration International, Inc. (Coatings), without honoring Chemco's lien on those funds.  The issues are whether (1) the contract between Coatings and the State of Illinois (State) was for "public work" within the meaning of the Public Construction Bond Act (Bond Act) (30 ILCS 550/0.01 
et seq. 
(West 1994)) and (2) the contract between Coatings and the State was for "public improve­ment" within the meaning of section 23 of the Mechanics Lien Act (Lien Act) (770 ILCS 60/23 (West 1994)).  Only those facts necessary for this court's disposition will be discussed.

Summary judgment is properly granted only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  This court considers the propriety of granting or denying the motion for summary judgment 
de novo.  Outboard Marine Corp. v. Liberty Mutual Insurance Co., 
154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992).  In addition, the resolution of the issues in this case turn on the construction of two statutes.  Statutory construction is a question of law (
Vrombaut v. Norcross Safety Products, L.L.C., 
298 Ill. App. 3d 560, 562, 699 N.E.2d 155, 156 (1998)) that is also considered 
de novo 
by this court (
R.L. Polk & Co. v. Ryan, 
296 Ill. App. 3d 132, 139, 694 N.E.2d 1027, 1033 (1998)).

"The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature.  
Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc., 
158 Ill. 2d 76, 81, 630 N.E.2d 820, 822 (1994); 
Kraft, Inc. v. Edgar, 
138 Ill. 2d 178, 189, 561 N.E.2d 656, 661 (1990).  The words of a statute are given their plain and commonly understood meanings.  
Forest City Erectors v. Industrial Comm'n, 
264 Ill. App. 3d 436, 439, 636 N.E.2d 969, 972 (1994).  Only when the meaning of the enactment is unclear from the statutory language will the court look beyond the language and resort to aids for construc­

tion.  
Solich, 
158 Ill. 2d at 81, 630 N.E.2d at 822."  
R.L. Polk, 
296 Ill. App. 3d at 139-

40, 694 N.E.2d at 1033.

Section 1 of the Bond Act provides, in relevant part, as follows:

"All officials, boards, commissions or agents of this State, or of any political subdivision thereof in making contracts for public work of any kind to be performed for the State, or a political subdivision thereof shall require every contractor for such work to furnish, supply and deliver a bond to the State, or to the political subdivision thereof entering into such contract, as the case may be, with good and sufficient sureties."  30 ILCS 550/1 (West 1994).

Section 2 of the Bond Act provides, in relevant part:

"Every person furnishing material or performing labor, either as an individual or as a sub-contractor for any contractor, with the State, or a political subdivision thereof where bond or letter of credit shall be exe­

cuted as provided in this Act, shall have the right to sue on such bond or letter of credit in the name of the State, or the political subdivision thereof entering into such con­

tract, as the case may be, for his use and benefit ***."  30 ILCS 550/2 (West 1994).

The bond in this case was to secure the performance of Coatings in supplying paint to the State and its political subdivisions and to indemnify those governmental entities if there was a need to procure paint from some other source in the event of nonperformance by Coatings.  The bond was for 10% of the contract price with an obligation to furnish traffic marking paint to IDOT "and authorized Local Governmental Units."  The bond did not expressly secure payments to subcon­trac­tors or materialmen and, as a result, was not set at 100% or more of the contract price.  The underlying contract was entered into pursuant to the Governmen­tal Joint Purchasing Act (Purchasing Act) (30 ILCS 525/0.01 
et seq. 
(West 1994)), authorizing competitive bidding on purchases of all personal property, supplies, and services.

The contract in this case was to supply the State with a commodity, not "for public work."  "Public work" includes the building of a jail (
County of Mercer v. Wolff, 
237 Ill. 74, 78, 86 N.E. 708, 710 (1908)) or another prison facility (
Brown v. City of Greenville, 
203 Ill. App. 3d 1035, 1037, 561 N.E.2d 446, 447 (1990)).  In this case, we need not decide whether painting lines on roadway surfaces falls within the dictionary definition of "public work."

The parties agree the Lien Act and Bond Act should be construed together.  Neither party asks this court to construe "public work" and the Bond Act 
in pari materia 
with the definitions contained in other statutes, including the Prevailing Wage Act (820 ILCS 130/2 (West 1994)).

In 
Pete Lien & Sons, Inc. v. City of Pierre, 
577 N.W.2d 330 (S.D. 1998), summary judgment was granted for the city.  Fessnell Transport and the city entered into a contract to supply gravel to the city stockpile for general road mainte­nance.  Fessnell purchased the gravel from Lien.  When Fessnell defaulted on the contract with the city and failed to pay Lien for gravel already delivered to the city, Lien attempted to recover against the city.  The court determined the gravel was not furnished for the construc­tion or repair of a "public improve­ment," even though paid for with public funds.  The court defined "improvement" as "'a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.'"  
Pete Lien, 
577 N.W.2d at 331, quoting Webster's Third New International Dictio­nary 1138 (1976) (part 2(b)(1)).  A pile of gravel did not fall into that defini­tion.  See also 
Rogers v. County of Nez Perce, 
83 Idaho 467, 470, 364 P.2d 1049, 1050 (1961) (no bond was required because a contract for crushing and stockpil­ing gravel for some future use did not constitute "con­struction, alteration or repair" of a public work); 
Ozaukee Sand & Gravel Co. v. City of Milwaukee, 
243 Wis. 38, 43, 9 N.W.2d 99, 101-02 (1943) (a contract for furnishing sand and gravel to the city was not a contract for "public improvement" within the meaning of the statute creating a trust fund for or on behalf of materialmen and laborers for the payment of claims, and the fact that sand and gravel was used for repairs and maintenance work did not require a contrary result).  

Plaintiffs argue that the materialman is afforded protection under the Bond Act for materials supplied and incorpo­

rat­ed into a public work.  However, the cases they rely on involved suppliers of materials to contractors who constructed projects that fit within the definition of "public work."  

Plaintiffs want this court to interpret the term "public work" so broadly as to virtually encompass any State contract.  We decline to do so.  The facts of this case indicate the State was merely acquiring supplies by purchasing commodities.  The supplies may or may not be used in a public work, but certainly Coatings was not engaged to apply the paint and was not a contrac­tor who entered into a contract for public work to be performed for the State within the meaning of the Bond Act.  It supplied material to be used by the State and its political subdivisions.  

The plaintiffs also argue that the contract in this case has been treated by IDOT as a contract for public work, demon­

strating IDOT's interpretation of the contract as being one for public work.  Plaintiffs rely on the following facts:  (1) when claimant first submitted a notice of lien, Muraro's responsive letter pointed to a deficien­cy in failing to identify a public improve­ment; (2) after claimant filed a second notice of lien, Muraro, chief, bureau of claims, on behalf of Brown, Secretary of IDOT, acknowledged receipt of the notice of lien and set forth the procedures and guidelines to follow under the Bond Act without objecting that "no public improvement is identified," and at the bottom of the letter Muraro directed Dan Erwin to withhold $648,120 for 90 days; (3) when Muraro notified Bittings of the release of the funds, no indication was given that IDOT had determined no public improvement was involved; and (4) when claimant made a claim on the bond to Employers Mutual, Employers Mutual acknowledged receipt of the claim, requested further information and completion of the proof of claim form, and stated its insistence on strict compliance with all terms and provisions of the bond and the "statute controlling its bond," which according to plaintiffs implicitly acknowledged the applica­tion of the Bond Act.

Estoppel is not available here.  

"[T]he doctrine of estoppel applies against the State only when some positive acts by State officials may have induced an action by the adverse party under circumstances where it would be inequitable to hold the adverse party liable for the act so induced; mere inaction by the State is not sufficient to invoke estoppel."  
Pavlakos v. Department of Labor, 
111 Ill. 2d 257, 265, 489 N.E.2d 1325, 1328 (1985).

To establish equitable estoppel a plaintiff must show that (1) defendant made some misrepresentation or concealment of a material fact; (2) defendant had actual or implied knowledge that the representations were untrue at the time they were made; (3) plaintiff was unaware of the untruth of the representa­tions both at the time made and the time they were acted upon; (4) defendant either intended or expected his represen­ta­tions or conduct to be acted upon; (5) plain­tiff did in fact rely upon or act upon the representations or conduct; and (6) plaintiff would be prejudiced if defendant is not estopped.  Plaintiff must have had no knowledge or means of knowing the true facts and cannot disregard obvious facts, or neglect to seek information that is easily accessible, and then charge his igno­rance to others.  
Nickels v. Reid, 
277 Ill. App. 3d 849, 855-56, 661 N.E.2d 442, 446-47 (1996). 

Plaintiffs ask this court to find that IDOT implicitly construed the Bond Act as applying to the underly­ing contract with Coatings because IDOT did not expressly state the Bond Act did not apply.  However, if plaintiffs are not entitled to recover under the Bond Act, they are not prejudiced by any statement in Muraro's letters.  Furthermore, even if IDOT had interpreted the Bond Act, this court would not be bound by an incorrect interpretation.  
Denton v. Civil Service Comm'n, 
176 Ill. 2d 144, 148, 679 N.E.2d 1234, 1236 (1997).  The Bond Act is not applicable under the facts of this case.  

The subsection of the Lien Act sought to be construed with regard to this issue is section 23(c), which provides as follows:

"Any person who shall furnish materi­al, apparatus, fixtures, machinery or labor to any contractor having a 
contract for public im­

provement for the State, 
may have a lien for the value thereof on the money, bonds or warrants due or about to become due the con­

tractor having a contract with the State under the contract, by giving to the Director or other official, whose duty it is to let such contract, written notice of his claim for lien containing a sworn statement of the claim showing with particularity the several items and the amount claimed to be due on each."  (Emphasis added.) 770 ILCS 60/23(c) (West 1994).

The parties dispute whether a "contract for public improve­ment with the State" is involved in this case.  The Lien Act does not attach a lien to the public improvement, but allows a subcon­trac­tor to place a lien on the funds due or to become due the contrac­tor.  
McMillan v. Joseph P. Casey Co., 
311 Ill. 584, 587-88, 143 N.E. 468, 470 (1924).

Chemco contends the courts have interpreted the language of section 23 broadly.  However, the cases do not support Chemco's position in the case at bar.  Mechanics liens have been recognized where (1) a private entity or person contracts with a governmental entity to construct a public improvement for the governmental entity; (2) the contractor acquires supplies from a second private entity or person; (3) the supplies are consumed as a result of the construction, although they need not be incorporat­ed into the public improvement; and (4) the contractor fails to pay the subcontractor or materialman.  
Alexander Lumber Co. v. City of Farmer City, 
272 Ill. 264, 274-76, 111 N.E. 1012, 1016 (1916) (use of an engine and pump, oil barrels, a tank, and lumber used in sheathing and shoring a trench, building forms at retaining and head walls, and as a track upon which to run a heavy excavating machine); 
McMillan, 
311 Ill. at 586-90, 143 N.E. at 469-71 (materi­als, tools, and machinery); 
Standard Oil Co. v. Vanderboom, 
326 Ill. 418, 424, 158 N.E. 151, 153 (1927) (gasoline, oil, and grease for the use of contractors); 
Koenig v. McCarthy Construction Co., 
344 Ill. App. 93, 95-100, 100 N.E.2d 338, 338-41 (1951) (specified wooden and steel forms, concrete, and steel molds for making precast manhole rings used in the construc­tion of a new sewer system).

Here, Chemco argues that the materials it supplied were used up in the paint supplied by Coatings to the State.  However, Coatings did not have a contract to do any work for the State, only to supply paint to the State or its political subdivisions.  Coatings is not a contractor under the Lien Act.  Section 1 of the Lien Act defines a "contractor" as:

"Any person who shall by any contract or contracts, express or implied, or partly expressed or implied, with the owner of a lot or tract of land, or with one whom the owner has authorized or knowingly permitted to contract, to improve the lot or tract of land or to manage a structure thereon, or to fur­

nish material, fixtures, apparatus or machin­

ery, *** or furnish or perform labor or ser­

vices as superintendent, time keeper, mechan­

ic, laborer or otherwise, in the building, altering, repairing or ornamenting of the same; or furnish material, fixtures, appara­tus, machinery, labor or services, forms or form work used in the process of construction where concrete, cement or like material is used, or drill any water well on the order of his agent, architect, structural engineer or superintendent having charge of the im­prove­

ments, building, altering, repairing or orna­

menting the same ***."  770 ILCS 60/1 (West 1994).

In short, a contractor is any person who makes an improvement to land under a contract with the owner.  
Leveyfilm, Inc. v. Cosmopol­

itan Bank & Trust, 
274 Ill. App. 3d 348, 352, 653 N.E.2d 875, 878 (1995).  A "'public improvement' is generally understood to mean any permanent improvement upon real property owned by [a public body]"  (
Western Lion Ltd. v. City of Mattoon, 
123 Ill. App. 3d 381, 384, 462 N.E.2d 891, 894 (1984) (construing section 4-5-11 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 4-

5-11) (relating to "all contracts, of whatever character, pertain­

ing to public improvement"))).

The individual defendants argue that the word "for" as used in the context of section 23(c) means "with the purpose or object of."  Webster's Third New International Dictionary 886 (1986) (first definition, part 2(e)).  Chemco offers no contrary definition.

Section 23(c) of the Lien Act applies when a private person or entity makes an improvement to public land under a contract with the public body owning the land.  Since Coatings did not make such an improvement, section 23(c) of the Lien Act does not provide Chemco with a lien against public funds to be paid to Coatings.

The individual defendants also argue that Chemco has failed to perfect the lien.  In light of the construction placed on section 23(c) of the Lien Act, we need not address this conten­tion.

Finally, we note that the parties do not argue directly the effect, if any, the Purchasing Act may have on this proceeding between Coatings and Stephen B. Schnorf, Director of CMS.  The purpose of the contract was to enable IDOT, and all local govern­

men­tal units authorized to participate in the joint purchas­ing program, to purchase traffic marking paint.  It was simply a contract pursuant to the Purchasing Act, and neither the Bond Act nor Lien Act provisions as argued by plaintiff apply.  The Purchasing Act does not concern public work, but is, as it states, a mechanism for governmental units to jointly purchase personal property, supplies, and services.

The summary judgment of the circuit court of Sangamon County in favor of defendants is affirmed.

Affirmed.

KNECHT, P.J., and COOK, J., concur.